IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19–144–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| PATRICK BRYAN CLEVELAND, | |
| Defendant. | |

On August 21, 2023, Defendant Patrick Bryan Cleveland filed a motion under 18 U.S.C. § 3582(c)(1)(A) to reduce his 72-month federal drug sentence. (Doc. 108; *see* Doc. 68 (Judg.).) His projected release date is November 2, 2026. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed Mar. 21, 2024). On August 21, 2023, counsel was appointed to represent the defendant. (Doc. 109.) Cleveland filed a second pro se motion on October 2, 2023. (Doc. 111.) Appointed counsel filed an amended motion on January 31, 2024. (Doc. 116.) The government opposes. (Doc. 118.) For the reasons stated below, the defendant's motion is denied.

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the

1

Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, the defendant argues his excessive sentence, "the dangers and difficulty he has faced being incarcerated during the COVID-19 pandemic, and the FSA's sweeping changes to the applicable sentencing law" combine to create extraordinary and compelling reasons to reduce his sentence. (Doc. 117 at 17.) The government counters that there are no extraordinary and compelling reasons for the defendant's release and his release would not be justified under the § 3553(a) sentencing factors. Because the government is correct that there are no extraordinary and compelling reasons for Cleveland's release, his motion is denied.

I.   **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the defendant filed a request for relief with the warden at his facility on July 10, 2023,

2

and it was denied on August 29, 2023. (*See* Doc. 117-1 at 1–2.) The defendant has therefore exhausted his administrative remedies as required by statute.

## II. Extraordinary and Compelling Reasons

On November 1, 2023, the Sentencing Commission amended its policy statements under the Guidelines Manual Section 1B1.13(b) to provide explicit examples of what constitutes an "extraordinary and compelling reason." *See* USSG App. C, amend. 814, at 204. Specific examples include: (1) certain serious medical circumstances of the defendant; (2) the advanced age of the defendant combined with serious health issues; (3) certain family circumstances of the defendant; (4) whether the defendant was a victim of sexual or physical abuse while in custody; (5) other circumstances (or a combination of circumstances) "similar in gravity" to (1)–(4); and in some narrow situations, (6) the defendant's unusually long sentence after a change in sentencing law. *United States v. Kaneko*, 2024 WL 1018362, at *2 (D. Haw. Mar. 8, 2024).[1]

Relevant here, Cleveland's request seems to rely on the Guideline provisions insofar as they address his lengthy sentence and subsequent changes in sentencing

---

[1] Cleveland argues this list is not binding, but that is no longer the case—"because the November 1, 2023 amendments to §1B1.13 expressly apply to motions brought by the BOP Director and to those brought by individual defendants, these amendments [(former policy statements)] are now binding on the court." *Kaneko*, 2024 WL 1018362, at *2 (D. Haw. Mar. 8, 2024); *see also United States v. Cunningham*, 2024 WL 50908, at *1–2 (D. Mont. Jan. 4, 2024).

3

law, his rehabilitation, and the alleged harshness of incarceration in the age of COVID-19. The Court will address each in turn.

### A.     Safety-Valve Eligibility

The "safety valve," 18 U.S.C. § 3553(f), authorizes a sentencing court to impose a sentence below a statutory mandatory minimum provided, among other things, that the defendant has relatively minor criminal history and fully and truthfully discloses all he knows about the offense. *See* 18 U.S.C. § 3553(f)(1)–(5). Cleveland insists that he "appears to be eligible" for safety-valve relief based on the 2018 changes to 18 U.S.C. § 3553(f)(1), which sets forth new safety-valve eligibility regarding criminal history. *See* USSG §5C1.2(a)(1). In response, the government argues that Cleveland does not qualify for the safety valve under the current Guidelines because he has not provided the government with a complete and truthful statement about his involvement in the offense, as required by 18 U.S.C. § 3553(f)(5). *See* USSG §5C1.2(a)(5).

Although the government fails to support its claim that Cleveland never provided a complete and truthful statement about his involvement in the offense,[2] this factual dispute is immaterial because, even assuming Cleveland satisfies subsection (f)(5), he is ineligible for safety-valve relief. *See Pulsifer v. United*

---

[2] Cleveland apparently admits the government is correct in his reply brief, (*see* Doc. 121 at 6–8). .

4

*States*, 601 U.S. ___, 2024 WL 1120879 (2024). Under *Pulsifer*, to qualify for safety-valve relief, a defendant may neither have "more than 4 criminal history points," a "3-point offense," nor a "2-point violent offense." *Id.* at *3 ("Or stated conversely, a person fails to meet the requirement (and so cannot get relief) if he has any one of the three."). Here, Cleveland's criminal convictions resulted in a subtotal criminal history score of 15, (PSR ¶ 37), including three prior three-point offenses, (PSR ¶¶ 34–36). Thus, he is not safety-valve eligible under *Pulsifer*.

## B. Unusually Long Sentence

Cleveland further argues several elements of his "much harsher" sentence combine to establish an extraordinary and compelling reason. Not so. Among the 2023 changes to the Guidelines, the Sentencing Commission amended §1B1.13(b) to include new subsections (b)(6) and (c), which "operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." USSG App. C, amend. 814, at 208. Previously, district courts in the Ninth Circuit could "consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)." *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022). However, the 2023 Amendments changed things.

5

As amended, §1B1.13(b)(6) permits courts to reconsider "an unusually long sentence" but only so long as the law at issue is not a non-retroactive Guideline amendment and the defendant has served at least ten years and can show the change in the sentencing law would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Otherwise, §1B1.13(c) provides:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law . . . may be considered for purposes of determining the extent of any such reduction.

Here, because Cleveland has not served ten years and is challenging a non-retroactive Guideline amendment—i.e., the modified safety valve at §5C1.2 and §2D1.1(a)(1), (3)—§1B.13(c) applies. Accordingly, his argument may only be considered "for purposes of determining the extent of any such reduction" after finding an independent extraordinary and compelling reason.[3] Because Cleveland

---

[3] This discussion of which provision of the sentencing law applies is necessary because Cleveland's briefing is unclear as to which extraordinary and compelling basis entitles him to compassionate release. At one point, Cleveland argues he is entitled to a reduction under the amendments to USSG §1B1.13(b)(4)(B)'s "modified safety valve." (Doc. 117 at 8.) However, this appears to be a typo because §1B1.13(b)(4)(B) provides relief for victims of physical abuse resulting in serious bodily injury while in custody, facts that Cleveland does not allege.

6

has not "otherwise establish[ed] that extraordinary and compelling reasons warrant a sentence reduction," as discussed further below, the change to safety-valve eligibility, even if he might now be eligible, is not relevant. *Id.*

As part of his change-in-sentencing-law argument, Cleveland also argues that the 2023 Amendments to "status points" would lower his criminal history score from 16 to 15. *See* USSG App. C, amend. 821; §4A1.1(e). Unlike the safety valve, this change, limiting the severity of "status points" on a defendant's criminal history score, is retroactive. *See* §1B1.10(d). Generally, to assert a claim for a sentence reduction under an amended Guideline range, a defendant can bring a motion under 18 U.S.C. § 3582(c)(2). USSG §1B1.10. However, "[a] defendant is ineligible for a sentence reduction if the relevant amendment does not have the effect of lowering the defendant's applicable guideline range." *United States v. Mercado-Moreno*, 869 F.3d 942, 949 (9th Cir. 2017); USSG §1B1.10(a)(2)(B). Here, even if a criminal history score of 15 were used, Cleveland would still be in criminal history category VI. Therefore, Cleveland is ineligible for a sentence reduction on this ground as well. *See Mercado-Moreno*, 869 F.3d at 949.

**C.  Rehabilitation and COVID-19**

Cleveland makes the following two arguments in tandem: (1) that his early release is appropriate because his BOP records indicate he has not been subject to any disciplinary action during his custodial term, and (2) that because he was

incarcerated during the COVID-19 pandemic, "his sentence has been more restrictive, punitive, and stressful than originally contemplated at sentencing." (Doc. 117 at 14.) Neither reason alone nor in combination can establish an extraordinary or compelling reason for Cleveland's early release.

Although the Court commends Cleveland for his good behavior, rehabilitation, by itself, can never establish an extraordinary and compelling reason for a sentence reduction. *See* USSG §1B1.13(d). And while incarcerated individuals have undoubtedly faced unforeseen challenges related to the pandemic, Cleveland's quality of life concerns are common to all prisoners, not the particular and personal medical or other reasons contemplated by the Guidelines. "If a set of circumstances applies to much of the prison population, it cannot be said to be extraordinary." *United States v. Carlos-Tofolla*, 2023 WL 3484163, at *3 (D. Idaho May 16, 2023). Further, although Cleveland's reply brief mentions that §1B1.13(b)(1)(D)(i) applies because he is being "housed at a correctional facility affected or at imminent risk of being affected by . . . an ongoing outbreak," he fails entirely to address (ii) and (iii), the other two essential elements of a claim under that three-part subsection. Thus, these arguments are unpersuasive.

### D. Other Extraordinary and Compelling Arguments in Reply

Also in his reply brief, Cleveland argues for the first time that subsections (3), "family circumstances of the defendant," and (5) "other reasons" further

8

support his request. Yet, Cleveland's opening brief does not substantively address either of these provisions. Consequently, the government has not had the opportunity to respond. *See Rowland v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 2023 WL 6378847, at *4 (D. Mont. Sep. 29, 2023) ("Allowing new issues to be raised in reply unfairly would deny the opposing party a fair chance to respond."). But even considering his reply, because Cleveland has not alleged facts to support the specific circumstances or anything similar in gravity to the extraordinary and compelling circumstances listed in §1B1.13, Cleveland has not established an extraordinary and compelling reason for relief.

On the subject of family circumstances, Cleveland argues that "[a]lthough his mother is not 'incapacitated,' her continued ability to care for Mr. Cleveland's three minor children is speculative and challenging for her and the children." (Doc. 121 at 3–4.) This speculative concern is not enough. The Guideline text contemplates a family circumstance so grave that it requires the defendant's early release because the defendant would be "the only available caregiver" to his minor child, or another immediate family member who is incapable of self-care. *See* §1B1.13(b)(3)(A)–(D). Cleveland's family situation, although unfortunately challenging, is not extraordinary or compelling under the Guidelines.

Nor has Cleveland established "other reasons . . . similar in gravity" to any of the enumerated circumstances in (1) through (4) to warrant a sentence reduction.

9

The Court has already discussed at length why none of Cleveland's alleged circumstances establish extraordinary and compelling circumstances under the enumerated Guideline provisions. But "under §1B1.13(b)(5), the court retains substantial discretion to determine what constitutes extraordinary and compelling reasons." *Kaneko*, 2024 WL 1018362, at *2 n.1. While the "other reasons" catch-all provision allows district courts to consider unenumerated reasons, these reasons must be independently serious, and Cleveland's circumstances do not meet this high bar. *See* USSG App. C, amend. 814, at 207. Here, Cleveland does not point to a single reason that, although not similar in nature is similar in *gravity* to the specified reasons. His circumstances, even when combined, fail to warrant compassionate release because they are not "truly 'grave': 'involving or resulting in serious consequence; likely to produce real harm or damage.'" *See United States v. Carter*, 2024 WL 136777, at *9 (E.D. Pa. Jan. 12, 2024) (quoting Grave, *Webster's Third New Int'l Dictionary* 992 (1993); *see also United States v. Pickard*, 2024 WL 759917, at *4 (D. Kan. Feb. 23, 2024) ("First, 28 U.S.C. § 944(t) makes clear that the Sentencing Commission cannot make rehabilitation alone 'extraordinary and compelling.' Using Section (b)(5) to bootstrap that result would undermine Section 944(t).").

In sum, neither the 2023 Guidelines Amendments nor Cleveland's additional arguments individually or collectively establish an extraordinary and compelling

10

reason for a sentence reduction. It is well established that the Court need not analyze the sentencing factors absent an extraordinary and compelling reason. *Keller*, 2 F.4th at 1284. Nevertheless, the Court will do so here.

### III. Section 3553(a) Factors

To determine whether compassionate release is appropriate, a court must consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Here, the § 3553(a) factors weigh heavily against a sentence reduction. Cleveland has a significant criminal history, including four prior felonies, three of which are drug possession convictions involving methamphetamine. (*See* PSR ¶¶ 28–36.) While on supervised release for his prior felony drug convictions, Cleveland committed the instant offense, which again involved distributing dangerous drugs. (*See* PSR ¶¶ 6–11, 38). Thus, the Court determined that

11

Cleveland required a period of incarceration for specific deterrence and to protect the public, as well as to provide him with much-needed treatment. Cleveland's advisory guideline range was 92 to 115 months, (PSR ¶ 58); yet, he received a sentence of 72 months, (Judg. at 2). His existing sentence therefore already reflects a favorable consideration of his personal history, his need for effective correctional treatment, and his mental health concerns. Put simply, Cleveland's sentence was the lowest the Court could justify in light of his conduct. Reducing Cleveland's sentence further would denigrate the seriousness of his crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 108, 111, and 116) is DENIED.

DATED this 1st day of April, 2024.

*Susan P. Watters*
Susan P. Watters, District Judge
United States District Court